LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, Plaintiff,

v.

James WILLIQUETTE, Vilas County Sheriff, and R. Terry Hoyt, Vilas County District Attorney, in their official capacities, Defendants.

No. 85–C–348–C.

United States District Court, W.D. Wisconsin.

March 10, 1986.

---

James M. Jannetta, Lac du Flambeau, Wis., for plaintiff.

John D. Niemisto, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for declaratory and injunctive relief from defendants' threat-

ened enforcement of state criminal law against plaintiff for the sale of "pull tabs" at its bingo games. It is before the court on cross-motions for summary judgment. Jurisdiction is present. 28 U.S.C. §§ 1331 and 1362.

For the purpose of deciding the motions for summary judgment, I find that there is no genuine issue with respect to the following facts.

### FACTS

Plaintiff Lac du Flambeau Band of Lake Superior Chippewa Indians is a federally recognized Indian tribe operating with a constitutional form of government. It was organized under Section 16 of the Indian Reorganization Act, 25 U.S.C. § 476. Defendant James Williquette is the Vilas County Sheriff responsible for state law enforcement in Vilas County. Defendant R. Terry Hoyt is the Vilas County District Attorney responsible for prosecuting violations of state law committed in Vilas County.

The Lac du Flambeau Indian Reservation was established by Article 2 of the Treaty of September 30, 1854, 10 Stat. 1109. The boundaries of the reservation were established in 1866, have not changed since then, and lie primarily within Vilas County, Wisconsin.

Plaintiff is a functioning government that regulates the conduct of its members on the reservation through codes and ordinances enforced by plaintiff's court system. Pursuant to plaintiff's Bingo and Raffle Control Ordinance, as revised July 23, 1984, games known as "pulltabs" or "Vegas tickets" are being conducted on the reservation.

Pulltabs share certain common characteristics. Each pulltab ticket in a box is identical on its front, displaying the winning combinations, the prize for each, and the number of winning tickets in each box. The reverse contains three to five tabs that the buyer pulls back to reveal the symbols printed beneath the tabs, which may be feathers, tepees, and moccasins, or cherries, bells, and gold bars. If any of the rows of symbols under the tabs match the winning combinations shown on the front, the ticket is a winning one.

Distributors sell pulltabs to plaintiff in boxes containing between a few hundred to over two thousand tickets. Each box has a fixed number of winners of different cash prizes, ranging from $1.00 or $2.00 to $100.00 or more. The top prize has the fewest number of winners, and the number of winners gradually increase with the decreasing value of the prize. Tickets are sold for either fifty cents or one dollar.

Pulltabs are sold under the auspices of the tribe through the Tribal Bingo Manager. Pulltabs are sold only by tribal bingo workers, only at the tribal bingo hall located on the reservation within Vilas County, and only during bingo games, which occur on Wednesday, Thursday, and Saturday evenings, and on Sunday afternoons.

Two employees sell tickets, and one pays out the prizes. The tickets are drawn from a tub in the amount purchased by the player, who is required to claim his or her prize by returning the winning ticket that same night. Tribal employees keep records on each lot.

The percentage of gross profit (take minus price pay off) on each box of pulltabs is generally between 18% and 33%, excluding the cost of the box, salary, overhead, and other expenses of sale.

Plaintiff has 2,138 members, two-thirds of whom live on the reservation. Of those who are eligible for employment, two-thirds are unemployed. One-fourth of those who are employed earn less than $7000.00 a year. In addition to program-specific funds which it receives from federal or state sources, plaintiff receives revenues from several sources which are unrestricted in use, and which comprise plaintiff's general fund. The largest single source of the general fund, accounting for well over half its revenues, is the net profit from plaintiff's bingo and raffle operations.

The general fund is appropriated by the Tribal Council annually to fund a variety of tribal programs and services, including var-

ious general governmental expenses, the President's salary, the Enrollment Department, the Realty and Natural Resources Department, the library and museum, water and sewer service, a youth alcohol and drug program, the elderly nutrition program, tourism promotion, the tribal attorneys, and the Ojibway Cultural Association.

In addition to the annually budgeted amounts, during the fiscal year the Tribal Council appropriates by resolution general fund monies for a variety of purposes of a charitable, educational, spiritual, or governmental nature.

By letter of February 15, 1985, defendant Hoyt, the Vilas County District Attorney, informed the tribal chairman, Michael Aller, that the State of Wisconsin intended to prosecute plaintiff's sale of pulltabs.

## OPINION

The question before the court is whether the State of Wisconsin can prohibit the sale of pulltabs by the plaintiff tribe on its own reservation. Pursuant to Public Law 280 (18 U.S.C. § 1162, 28 U.S.C. § 1360), Wisconsin and certain other states have been granted limited civil and general criminal jurisdiction over the Indian lands within their states, with some specific exceptions, such as the Menominee Reservation in Wisconsin. This grant of criminal jurisdiction has been held to permit states to enforce criminal laws that are essentially prohibitory in nature, designed to protect the health, safety, and general well-being of its citizens; it does not authorize the states to enforce criminal laws that are intended merely to regulate specific conduct and generate revenue. *Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). *United States v. Marcyes,* 557 F.2d 1361 (9th Cir.1977), is an example of a permissible state criminal prosecution. In that case, a prosecution of Indians selling fireworks on an Indian reservation was upheld on the ground that the state's fireworks laws were prohibitory and not regulatory:

The possession of fireworks is not the same situation encountered in other regulatory schemes such as hunting or fishing, where a person who wants to hunt or fish merely has to pay a fee and obtain a license. The purpose of such statutes is to regulate the described conduct and to generate revenues. In contrast, the purpose of the fireworks laws is not to generate income, but rather to prohibit their general use and possession in a legitimate effort to promote the safety and health of all citizens.

*Id.* at 1364.

Historically, the State of Wisconsin has prohibited all forms of gambling, including lotteries, and has imposed criminal sanctions upon violators of the gambling laws. In 1973, however, the state's voters approved an amendment to the constitution, excepting bingo games played under certain circumstances from the general prohibition of "lotteries," which are defined as enterprises

wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill.

Wis.Stat. § 945.01(5)(a). In 1977, the voters amended the constitution again to except certain raffles from the criminal prohibition. Pursuant to these changes in the state's constitution, the Wisconsin legislature enacted Wis.Stat. Chapter 163, which governs the conduct of bingo and raffles in the state, and amended Wis.Stat. § 945.01, which contains definitions relating to gambling, to provide: " 'Lottery' does not include bingo or a raffle as defined in s. 163.03 if conducted under ch. 163." Wis. Stat. § 945.01(2)(am). With the exception of bingo games and raffles conducted in accordance with the provisions of Wis.Stat. Chapter 163, the state continues to treat other forms of gambling, including any other version of a lottery, as criminal, with operators and players subject to prosecution.

In an opinion entered in *Oneida Tribe of Indians of Wisconsin v. Wisconsin,* 518

F.Supp. 712, 719 (W.D.Wis.1981), I held that under the jurisdictional scheme of Public Law 280, Wisconsin could not enforce its laws governing bingo games on the reservations because these laws do not prohibit the playing of bingo by the general public on health and safety grounds, but merely regulate the manner in which the bingo games are operated and for what purposes the profits are used. The state did not appeal that decision, and it does not argue in this case that it has any authority to prohibit the operation of bingo games or ordinary raffles on the reservations. It bases its claim in this case on its contention that plaintiff's pulltabs games are not raffles under the statute. For its part, plaintiff makes two arguments: first, that pulltabs are raffles and, alternatively, even if they are not, the state statutes governing lotteries are so riddled with exceptions as to evidence a legislative change of mind about the need to protect the state's citizens from lotteries.

The statutes defining raffles read as follows:

163.03(12m) "Raffle" means a game of chance in which tickets are sold and a drawing for prizes is held.

\* \* \* \* \* \*

(14m) "Regular raffle" means a raffle for which a single drawing for prizes is held on a specified date after the sale of tickets has been completed.

\* \* \* \* \* \*

(17) "Special raffle" means a raffle for which one or more drawings are held and prizes awarded on the same day as the tickets are sold.

The parties do not dispute that, as operated by plaintiff, the game of pulltabs involves chance, the pulltabs are tickets which are sold, the pulltabs are drawn from a tub, and prizes are awarded to the winning ticket holders. It would seem that having made these concessions, defendants have left little room for their argument that plaintiff's pulltabs games are not raffles. However, defendants contend that because the pulltabs game is not operated in the way raffles are ordinarily conducted, that is, with a lapse of time between the purchase of ticket and the drawing of the prize, it is a prohibited lottery, rather than a raffle. As plaintiff points out, however, the question is not whether pulltabs fit the defendants' idea of the ordinary meaning of the word raffle, but whether they fit the specific definition of a raffle as enacted by the state legislature. Since the legislature did not make the lapse of time a specific element of a raffle and indeed even made special provision for raffles that have drawings on the same day, it is difficult to accept defendants' argument that plaintiff's pulltabs game is not a raffle simply because the prizes can be determined immediately after the ticket is sold and drawn.

Defendants make the additional argument that pulltabs cannot constitute a statutorily excepted raffle because the odds change every time a pulltab ticket is pulled, whereas in an "ordinary" raffle, the odds remain the same for every ticket sale.[1] However, there is nothing in the statutory definition of raffle that makes constant odds an essential element. It would have been easy enough for the legislature to have written such a requirement into the legislation had it believed it to be a critical characteristic of a legal raffle. Because the statute makes no reference to the odds, I find this argument of defendants unconvincing.

I conclude that defendants have failed to show that plaintiff is conducting a prohibited lottery not excepted from the statutes prohibiting lotteries in general. Therefore, defendants may not enforce the state's criminal laws regulating lotteries against plaintiff or its members who conduct pulltab games on plaintiff's reservation. Hav-

---

**1.** Of course, defendants' description of an "ordinary" raffle as having constant odds is accurate only for raffles that have a predetermined number of tickets all of which are sold. If all of the tickets are not sold or more tickets are printed, the odds change with each sale.

ing reached this conclusion, I decline to address plaintiff's broader contention that Wisconsin's gambling laws are so riddled with exceptions that the state is no longer in a position to characterize them as prohibitory in nature, rather than regulatory.

Plaintiff has requested a declaratory judgment that the tribe may conduct raffles pursuant to the tribe's ordinance free from enforcement of state laws governing raffles and lotteries. This request will be denied, given the nature of the resolution of the controversy. Also, plaintiff has requested that defendants be enjoined from any enforcement of state laws governing raffles and lotteries against the tribe for the operation of raffles pursuant to its ordinance. Again, the relief requested is broader than the controversy in question. I hold only that the state has no authority to enforce the state law governing raffles against plaintiff for the conduct of pulltabs games operated as described herein. I imply no opinion about the legality of any other kinds of games that might be encompassed by the definition of raffle in plaintiff's ordinance.

In its reply brief of November 8, 1985, plaintiff indicated that it wishes to withdraw its claim for relief under 42 U.S.C. § 1983. I construe this statement as a motion for leave to withdraw its claim and will grant the motion.

### ORDER

IT IS ORDERED that

1) plaintiff's motion to withdraw its claim under 42 U.S.C. § 1983 is GRANTED;

2) plaintiff's request for declaratory judgment that the tribe may conduct its pulltab games in the manner described in this opinion is GRANTED; and

3) defendants are enjoined from enforcing state laws governing raffles and lotteries against plaintiff for the conduct of its pulltab games operated as described herein.