## Nos. CP-CV-12-86, CP-CV-15-86
## CP-CV-17-86, CP-CV-24-86, CP-CV-31-86
### District Court of the Navajo Nation
#### Judicial District of Crownpoint

Sandoval,  *et al., Plaintiffs,*

*vs.*

Tinian, Inc.  *et al., Defendants.*

Decided July 11, 1986

## OPINION

*Before Robert Yazzie, District Court Judge.*

*Paul Fife, Esq., Albuquerque, New Mexico for the Plaintiffs; Tim F. O'Brien, Esq., Albuquerque, New Mexico for the Defendants.*

*Opinion delivered by Yazzie, District Court Judge.*

### Findings of Fact

1. Plaintiffs are Navajo Indians.
2. Defendant Tinian, Inc. is a non-Indian corporation; defendant Javen Tanner is a non-Indian.
3. These actions concern commercial transactions occurring at the defendants' primary place of business, which is the Torreon Super Mart in Torreon, New Mexico.
4. The Torreon Super Mart is located within the boundaries of the Torreon Chapter and within Township 18 North, Range 4 West N.M. P.M.
5. The southernmost portion of the Torreon Super Mart building; a strip 8 to 10 feet wide, is located on Navajo Indian Allotment No. 011093.
6. Customers of the Torreon Super Mart park in an area south of the building; this area is also located on Allotment 011093.
7. The Torreon Super Mart's sewage lagoon is located on Allotment 011093.
8. The population within the boundaries of the Torreon Chapter is 81.7 percent Indian.

9. Approximately 80 percent of the Torreon Super Mart's customers are Navajo Indians.

10. All of the land within Township 18 North, Range 4 West is either owned by Navajo Indians or the Navajo Tribe, or leased to Navajo Indians, except for ¾ of a section, which is partially owned and partially leased by Tinian, Inc.; in other words, almost 98 percent of the land within the township is owned or leased by Navajo Indians.

11. The Torreon Chapter is a part of the Eastern Navajo Agency and elects a representative to the Navajo Tribal Council.

12. Grazing on federal lands in the Torreon Chapter is controlled by the District 15 Land Board, an agency of the Navajo Tribe, through a cooperative agreement between the tribe, the Bureau of Indian Affairs, and the Bureau of Land Management.

13. The Navajo Police Department in Crownpoint provides law enforcement services to the Torreon community.

14. Medical services in Torreon are provided by a clinic operated under contract with the Indian Health Service.

15. The Bureau of Indian Affairs operates a school in Torreon.

16. The water system in Torreon was built by the Indian Health Service and is maintained by the Navajo Tribe; the Torreon Super Mart receives its water from that system and pays no fees for the use of the water or the maintenance of the system.

17. The Torreon Super Mart is not located within the boundaries of the Navajo Treaty Reservation or the Executive Order 709 Reservation.

## Opinion and Order

The facts of this case are as set out in the findings of fact made by this court. *supra*. The questions which must be answered based on those facts and the applicable law are as follows: (A) Does this court have jurisdiction over the defendants in these cases and over the subject matter of the lawsuits; (B) Does this court have the power to issue declaratory judgments, and if not, is that cause to dismiss these lawsuits?; and (C) Does the fact that the plaintiffs have requested relief based on state law mandate the dismissal of these actions? Each of these questions will be addressed in this opinion.

## JURISDICTION

Defendants have claimed that this court does not have personal jurisdiction over them or subject matter jurisdiction over the transactions which

are the basis for the plaintiffs' complaints. Defendants argue that they are a non-Indian corporation and a non-Indian individual doing business outside the boundaries of the Navajo Reservation, and that the transactions occurred outside those boundaries. It is true that the Torreon Super Mart, defendants' principal place of business, is located in the off-reservation portion of what is known as Navajo Indian Country. However, as the findings of fact show, the Torreon Super Mart is located within the Torreon Chapter, which itself is part of the Eastern Navajo Agency. The Super Mart is unconnected to Navajo territory, as would be an enterprise operating in Albuquerque. This court must, then, analyze the facts of these cases and of the situation in Torreon to determine whether the court's exercise of jurisdiction over these cases is proper.

## A. SUBJECT MATTER JURISDICTION

It should be noted at the outset that if the Navajo Tribal Council has not acted to assert jurisdiction over the Torreon Chapter and transactions occurring therein, this court would have no such jurisdiction. However, the council has done so. 7 N.T.C. §253 defines the jurisdiction of the trial courts of the Navajo Nation, in pertinent part, as follows: "(2) Civil Causes of Action. . . . All civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur in Navajo Indian Country." This provision covers any defendant, including a non-Indian, and all transactions entered into in Navajo Indian Country. 7 N.T.C. §254, as amended in 1985 by Tribal Council Resolution CJY-57-85, then delineates the areas that are included in Navajo Indian Country: "all land within the exterior boundaries of the Navajo Indian Reservation or of the Eastern Navajo Agency, all land within the limits of dependent Navajo communities, all Navajo Indian allotments. . . ." Since it is undisputed that Torreon is within the Eastern Navajo Agency, it is clearly within the ambit of this definition of Navajo Indian Country. Therefore, the Navajo Nation has granted this court jurisdiction to hear civil cases where the defendant resides in or has caused an act to occur in Torreon. This court must now consider whether that grant of jurisdiction was proper.

The Navajo Tribal Court of Appeals has upheld the validity of a similar jurisdictional resolution which defined the territorial jurisdiction of the tribe to include the Eastern Navajo Agency and Land Management Districts 15, 16 and 19 (excluding Gallup). *Navajo Tribe of Indians v. Holyan*, 1 Nav. R. 78 (1973). The *Holyan* court noted that the tribal council had passed its resolution, CMY-28-70, after considering evidence regarding land status and population in the Eastern Navajo Agency. That resolution stated that the entire Eastern Navajo Agency is a dependent Indian community and, thus, is part of Navajo Indian Country. The

*Holyan* court held that the facts cited by the Council were a sufficient basis for that determination. In so holding, the court considered the definition of Indian Country, which is found at 18 U.S.C. §1151. Indian Country under that statute includes reservations, dependent Indian communities and allotments. In considering whether the Eastern Navajo Agency met the requirements of that definition, the court applied the analysis of "dependent Indian community" found in *U.S. v. Martine*, 442 F. 2d 1022 (10th Cir. 1971), which is the authoritative case on the question. The 10th Circuit in *Martine* held that three factors should be considered when deciding whether an area is a dependent Indian community: the nature of the area in question, the relationship of the inhabitants of the area to Indian tribes and the federal government, and the established practice of governmental agencies toward the area. The *Holyan* court analyzed each of these factors with regard to the Eastern Navajo Agency and held that the agency is indeed a dependent Indian community. Under *Holyan*, then, which is binding precedent on this court, Torreon is a dependent Indian community and part of Navajo Indian Country.

In addition, an analysis of the facts presented in this case shows that there could be no question that Torreon is a dependent Indian community under the *Martine* and *Holyan* analysis. Torreon is a Navajo community with a population that is 81.7 percent Navajo. Within the township, in which the defendants' place of business is located, almost 98 percent of the land is owned or leased by the Navajo Tribe. The relationship of the inhabitants of Torreon to the tribal and federal governments is the same as the relationship between those governments and reservation dwellers. The tribal and federal governments provide police protection, medical services, water system maintenance, schooling, and other services to Torreon's inhabitants. Finally, federal and tribal agencies have an established practice of treating Torreon as a Navajo community. Torreon sends a representative to the Navajo Tribal Council; the Bureau of Land Management and the Bureau of Indian Affairs have entered into an agreement with the Navajo Tribe so that the tribe's land board controls grazing on federal lands within the Torreon community. Consideration of all of the above factors leads inescapably to the conclusion that Torreon is a dependent Indian community and is part of Navajo Indian Country.

Defendants argue that 18 U.S.C. §1151 is a criminal statute and should not be applied to civil cases. Defendants would limit this court's jurisdiction in civil matters involving non-Indians to cases arising on the reservation. These arguments are without merit. There is no reasonable basis for a holding that this court's territorial jurisdiction is more limited in civil cases than in criminal cases. In addition, the Navajo Tribal Council has mandated that this court's jurisdiction be coextensive with the Indian Country definition found in 18 U.S.C. §1151. Its power to do so is con-

firmed by statements made by the United State Supreme Court and other courts. In *DeCoteau v. District County Court*, 420 U.S. 425 (1975), the Supreme Court stated that "While §1151 is concerned, on its face, only with criminal jurisdiction, the Court has recognized that it generally applies as well to questions of civil jurisdiction." 420 U.S. at 427, note 2 (citations omitted). The Federal District Court of Utah has stated that it is well settled that the definition applies to questions of civil jurisdiction. *Ute Indian Tribe v. Utah*, 521 F. Supp. 1072 (D. Utah 1981).

The Tribal Council's mandate and the statements made in the above cases recognize that the same important policy considerations, which require that tribal courts have jurisdiction on the reservation, apply to situations involving off-reservation dependent Indian communities and allotments. A dependent Navajo community such as Torreon will have a population which is mostly Navajo; the Navajo Tribe will provide many services to that population; and that population will have a voice in the way the tribe is run. It is crucial that the tribal courts have jurisdiction to hear disputes between the members of that Navajo population and businesses, Indian or non-Indian, who would locate within the community and engage in commerce with that population. *Cf. Williams v. Lee*, 358 U.S. 217 (1959), and *Kennerly v. District Court*, 400 U.S. 423 (1971), in which non-Indian businesses located within Indian Country were required to sue in tribal courts instead of state courts to resolve disputes with Indians.

Defendants argue that this court does not have jurisdiction over these cases because the transactions, which are the subjects of the lawsuits, occurred on fee land and involved a non-Indian entity. It is difficult to determine whether the transactions did occur on fee land because, as defendants have admitted, the south portion of the Torreon Super Mart building and the area where the customers park, are located on a Navajo Indian allotment. This court notes that defendants' claim that the parking area is located on a highway right-of-way running through the allotment; this court also notes, however, that the 18 U.S.C. definition of Indian Country includes all rights-of-way running through allotments.) Plaintiffs would not have had access to defendants' store if the allotment had not been used by defendants; therefore the allotment certainly contributed to the consummation of the transactions. The actual signing of the contracts could have occurred on defendants' fee land or on the allotment; this court cannot say because no evidence was introduced to shed light on that subject. Fortunately, it is not necessary for this court to determine the answer to that question. Defendants' fee land is located in the middle of a dependent Navajo community. Defendants are therefore in the same position as an owner of fee land located within a reservation. The United States Supreme Court has held that a tribe retains inherent sovereign power to

exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. "A tribe may regulate, through taxation, licensing or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana v. United States,* 450 U.S. 544 at 565 (1981). *Montana's* language applies to reservations because the case involved fee land within a reservation; however, the same analysis applies to land holders in a dependent Indian community. Defendants have located in the midst of a heavily Navajo community to do business with that community; important portions of the store's facilities are located on Navajo land; approximately 80 percent of the store's customers are Navajo. Under those facts this court certainly has jurisdiction to hear disputes between defendants and Navajo plaintiffs who have done business at defendants' place of business.

Defendants have cited two cases for the proposition that this court's jurisdiction over non-Indians ends at the reservation border: *GMAC v. Chischilly,* 96 N.M. 113, 628 P. 2d 683 (1981), and *UNC Resources Inc. v. Benally,* 514 F. Supp. 358 (D.N.M. 1981). This court notes that neither of these cases concerned consensual transactions between the parties occurring within Navajo Indian Country; that the language in each directly conflicts with the United States Supreme Court's language in the *DeCoteau* case; and that both cases contain unnecessarily broad language which is extremely restrictive of tribal court jurisdiction. This court declines to follow those cases.

## B. PERSONAL JURISDICTION

Defendants have argued that this court does not have personal jurisdiction over them because they are non-Indians operating a business on fee land outside the reservation. The discussion of subject matter jurisdiction, however, has shown that defendants' business is located within a dependent Navajo community, deals primarily with Navajos, and avails itself of the use of a portion of a Navajo allotment. These are substantial contacts with members of the Navajo Tribe, and with property lying within the jurisdiction of the tribe; these justify the exertion of this court's jurisdiction over defendants. *International Shoe v. Washington,* 326 U.S. 310 (1945); *Navajo Tribe v. Orlando Helicopter Airways, Inc.,* 1 Nav. R. 40 (1972) (holding that when a non-Indian enters Indian land for the purpose of doing business with Indians, he may very well be said to have submitted to the jurisdiction of the tribal courts); *Thompson and Thompson v. Wayne Lovelady's Frontier Ford,* 1 Nav. R. 282 (Shiprock D. Ct. 1978). This court has personal jurisdiction over the defendants.

## Declaratory Judgment Issue

Defendants urge this court to dismiss these cases because one remedy which the plaintiffs have requested is a declaratory judgment. However, declaratory judgments are not the only relief the plaintiffs request; they also request money damages. Even if it were true that this court does not have the power to issue declaratory judgments, the proper remedy would be to strike plaintiffs' requests for such judgments, but hear their claims for money damages. The question of this court's power to issue declaratory judgments is not a jurisdictional question, but rather a question of whether plaintiffs have failed to state a claim for which relief can be granted. Plaintiffs have certainly done so by stating a claim for money damages.

In any event, this court holds that it does have the power to grant declaratory judgments. 7 N.T.C. §253, which is the statutory grant of jurisdiction to the Navajo Tribe's trial courts, states that this court shall have jurisdiction over *all* civil actions in which the defendant resides in Navajo Indian Country or causes an action to occur in Navajo Indian Country. An action for a declaratory judgment is a civil action and this court, therefore, has the power to issue such judgments. In addition, under 7 N.T.C. §204, this court can apply the federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, if there is some question over whether "all civil actions" includes actions for declaratory judgments. Defendants' motion to dismiss based on the fact that one form of relief requested in these cases is a declaratory judgment is denied.

## Application of State Law

Defendants have also moved to dismiss these lawsuits because plaintiffs are requesting that this court enforce a New Mexico licensing law and a New Mexico consumer protection statute against these non-Indian defendants. Defendants contend that since the relief requested is granted by state law, the state courts are the proper forum to hear these cases. This court cannot accept the proposition for several reasons. First, there is some doubt about whether a New Mexico court would have jurisdiction over these cases; this court's jurisdiction could preclude state court jurisdiction. *See e.g.*, Cohen's *Handbook of Federal Indian Law*, at 342, 355 (1982 ed.), stating that where a tribe has asserted jurisdiction over non-Indian defendants, that jurisdiction may be exclusive. If this court declined to accept jurisdiction, then, plaintiffs could be left without a forum. Second, this court certainly has the power to apply state law to a case, if the facts warrant it, and the state law has not been preempted by federal or tribal law. 7

N.T.C. §204. Therefore, plaintiffs have stated a claim upon which relief could be granted, and their lawsuits should not be dismissed without affording them an opportunity to present evidence to show why state law should apply to these cases. This court could ultimately decide not to apply such law, but that determination should await a hearing on the merits, because it will depend on the nature of the transactions and the existence of federal or tribal law applicable to those transactions. Finally, this court has decided that it is a proper forum in which to hear disputes between defendants and members of the Navajo Tribe. This decision is proper, because the transactions in which defendants and Navajos such as plaintiffs engage certainly affect the welfare of members of the Navajo Tribe. Cf. *Babbitt Ford v. Navajo Tribe*, 710 F. 2d 587 (9th Cr. 1983), *cert, denied*, 104 S. Ct. 1707 (1984). Since this court is the appropriate forum to hear these cases, and it has the power to grant the relief requested by plaintiffs, the motion to dismiss will be denied.

## Order

For all of the foregoing reasons, defendants' motion to dismiss these cases is hereby denied.