628 P.2d 683

**GENERAL MOTORS ACCEPTANCE CORPORATION, a Delaware Corporation, Petitioner,**

v.

**Patrick CHISCHILLY, Respondent.**

**No. 13226.**

Supreme Court of New Mexico.

April 21, 1981.

Rehearing Denied May 26, 1981.

Campbell, Cherpelis & Pica, Nicholas R. Pica, John F. Nivala, Albuquerque, for petitioner.

Wayne H. Bladh, Window Rock, Ariz., for respondent.

Jeff Bingaman, Atty. Gen., Thomas L. Dunigan, Deputy Atty. Gen., Thomas P. Whelan, Jr., Asst. Atty. Gen., Santa Fe, amicus curiae.

## OPINION

PAYNE, Justice.

The plaintiff, Patrick Chischilly, entered into a retail installment contract with a New Mexico corporation bank in Albuquerque for the purchase of a pickup truck. The sale was financed by the General Motors Acceptance Corporation (GMAC) which took a security interest in the truck. The plaintiff is a member of the Navajo Tribe, but resides off the reservation on lands owned by the United States and held in trust for the Navajo Nation. On two occasions the truck was repossessed by employees of GMAC from the plaintiff's residence. The plaintiff brought an action against GMAC for violating Navajo tribal law in the repossession. The issue raised in the trial court was which law, New Mexico civil or Navajo tribal, should apply. The trial court held that New Mexico had the most significant contacts with the case and so its law should be applied. Applying New Mexico law, the court dismissed the case for failure to state a cause of action. Following the dismissal the plaintiff appealed to

the Court of Appeals which reversed, Chief Judge Wood dissenting. The majority held that Navajo law should have been applied, and that if applied, the plaintiff had a cause of action. We granted certiorari and now reverse the Court of Appeals.

Before Navajo tribal law can be applied to the instant case, there must be a showing that the tribe had jurisdiction. Both the trial court and the Court of Appeals, in order to reach their respective decisions, necessarily assumed, without discussion, that the tribe had the requisite jurisdiction.

In *Begay v. First National Bank of Farmington*, 84 N.M. 83, 499 P.2d 1005 (Ct. App.1972), *cert. denied*, 84 N.M. 77, 499 P.2d 999 (1972), the Court of Appeals held in a case very similar to the instant case that to recover for the unlawful repossession of a pickup truck in violation of the Navajo Tribal Code, the plaintiff had the burden of proving that the repossession occurred on the Navajo Reservation. In the instant case the parties have agreed by way of stipulation that the repossession did not occur within the boundaries of the Navajo Reservation. The plaintiff argues instead that the tribe's civil jurisdiction extends beyond the reservation boundaries to include all lands that are in "Indian country." We hold that this extension of the tribe's civil jurisdiction beyond the reservation boundaries as against a non-Indian defendant is unjustified.

In 1832 the concept of tribal sovereignty and self-government was first recognized by the United States Supreme Court in *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832). There Justice Marshall stated that the Indian nations were

distinct, independent, political communities, retaining their original natural rights. . . .

. . . . .

The Cherokee nation, then, is a distinct community, occupying its own territory, with boundaries accurately described, in which the laws of Georgia can have no force.

*Id.* at 559–60. Although this absolute view of Indian sovereignty has been modified somewhat by subsequent cases, the princi-

ple that Indian jurisdiction is territorial in nature remains the touchstone of Indian jurisprudence. The idea that the territorial boundaries of the tribe's civil jurisdiction are co-existent with the boundaries of the reservation was discussed in the case of *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959) as:

There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the rights of the Indians to govern themselves. It is immaterial that the respondent is not an Indian. He was *on the Reservation* and the transaction with an Indian *took place there*. Cf. *Donnelly v. United States, supra* [228 U.S. 243, 269–272, 33 S.Ct. 449, 458–459, 57 L.Ed. 820]; *Williams v. United States, supra* [327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962]. The cases in this Court have consistently guarded the authority of Indian governments *over their reservations.* (Emphasis added.)

And also in *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270–71, 36 L.Ed.2d 114 (1973) as:

Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the state. (Citations omitted.)

The extension of tribal jurisdiction beyond the exterior boundaries of the reservation must be done only for overriding policy considerations or to avoid hampering the Indians' right of self-government as it carries with it the problem of "checkerboard" jurisdiction. This "checkerboard" pattern of jurisdiction would require lawyers and judges to consult tract books to determine whether to apply New Mexico or tribal law. *See* Justice Marshall's dissent in *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977). This type of confusing "checkerboard" jurisdiction currently exists in the field of criminal law because of the way 18 U.S.C. § 1151 (1977) defines Indian country. 18 U.S.C. § 1151 is a federal regulation which expands the tribe's jurisdiction over minor crimes in-

volving members of the tribe taking place on land defined as Indian country. This section defines Indian country as:

> [T]he term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the boarders (sic) of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a State, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

We feel that there is no compelling reason, in absence of federal law, to extend the same confusing pattern of jurisdiction into the civil area.

The plaintiff would have us close our eyes to the problems inherent in expanding the tribe's civil jurisdiction and rule that the tribal court has jurisdiction where an Indian brings suit against a non-Indian over civil matters arising on trust lands lying outside the reservation. As support for this proposition the plaintiff relies on: (1) a Navajo tribal ordinance; (2) a federal statute, 18 U.S.C. § 1151, dealing with federal criminal jurisdiction, and (3) dictum in the case of *DeCoteau v. District County Court,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975).

■ The tribe has enacted Navajo Tribal Resolution CMY–28–70, compiled as 7 N.T.C. 134 (1969 Ed.) and subsequently recompiled as 7 N.T.C. 254 (1977 Ed.). This ordinance grants the tribal courts civil and criminal jurisdiction over the reservation, and also over trust lands, allotments, dependent Indian communities, etc. This ordinance follows the definition of Indian country as found in 18 U.S.C. § 1151. This ordinance is helpful to the plaintiff only if the tribe has the power or authority to enact such a statute with respect to a non-Indian defendant. We hold that a tribe cannot sua sponte enlarge the jurisdiction of its tribal courts over non-Indians without express federal delegation. We find no federal delegation in this case.

■ The plaintiff argues that 18 U.S.C. § 1151 is authority for the tribe's ordinance and for the extension of tribal civil jurisdiction to lands outside of the reservation. However, Title 18 U.S.C. § 1151 merely defines the geographic area over which the federal government, and to a lesser extent the tribal government, may exercise criminal jurisdiction, and must be read in conjunction with the other sections defining criminal jurisdiction. Section 1152 allows the tribe to exercise criminal jurisdiction only over minor crimes involving Indians. The tribe has no jurisdiction when a non-Indian is involved. Section 1151 cannot be read to grant the tribe authority to enact ordinances like 7 N.T.C. 254 which would extend their civil jurisdiction over non-Indians.

Finally the plaintiff refers to the footnote in *DeCoteau v. District County Court, supra,* n. 2, as authority for the extension of 18 U.S.C. § 1151 to civil as well as criminal matters. While this footnote may be read to support this theory, it is ambiguous and the cases cited in support of the statements in the footnote do not refer to any civil application of 18 U.S.C. § 1151. We feel that the plaintiff's reading of the footnote would be a departure from the direction of *Mescalero Apache Tribe v. Jones, supra,* and *Williams v. Lee, supra,* and other cases indicating that the tribe's civil jurisdiction ends at the reservation line, and beyond it Indians, even in trust lands, are subject to the same nondiscriminatory laws as are all citizens of the state.

For the foregoing reasons we hold that the tribal court did not have jurisdiction over the instant case and the district court was correct in applying New Mexico law and dismissing the case. This case is remanded to the district court for entry of judgment consistent with the foregoing opinion.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior J., and FEDERICI and RIORDAN, JJ., concur.