2003-NMSC-019

74 P.3d 67

**TEMPEST RECOVERY SERVICES, INC., Plaintiff–Appellee,**

v.

**Leonard BELONE, Defendant–Appellant.**

No. 27,749.

Supreme Court of New Mexico.

June 10, 2003.

Louis J. Vener, Albuquerque, NM, for Appellee.

Joel R. Jasperse, Gallup, NM, for Appellant.

## OPINION

EDWARD L. CHÁVEZ, Justice.

{1} Plaintiff–Appellee Tempest Recovery Services, Inc. (Tempest) repossessed Defendant–Appellant Leonard Belone's (Belone) vehicle from his residence outside the Navajo Nation reservation boundaries on allotted Indian land in McKinley County, New Mexico. The principal question presented to this Court is whether the tribal court civil jurisdiction of the Navajo Nation extends beyond reservation boundaries to allotted Indian lands. In *General Motors Acceptance Corp. v. Chischilly,* 96 N.M. 113, 115, 628 P.2d 683, 685 (1981), this Court held that the territorial jurisdiction of the Navajo Nation did not extend to allotted Indian lands for purposes of civil jurisdiction and, therefore, Navajo law did not apply to repossessions occurring outside of Indian reservations. However, because United States Supreme Court precedent since *Chischilly* applies the definition of "Indian Country" in 18 U.S.C. § 1151 (2000) to civil matters, we now overrule *Chischilly* and hold that tribal court civil jurisdiction extends to allotted land within Indian Country. Accordingly, we reverse and remand this case to state district court to determine whether Navajo law applies to Belone's wrongful repossession counterclaim.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Belone is an enrolled member of the Navajo Nation who resides outside Navajo Nation reservation boundaries on allotted Indian lands in McKinley County. More specifically, Belone resides on Allotment No. 01058, allotted Indian land that is held in trust by the United States Department of Interior Bureau of Indian Affairs. Belone's allotment is considered part of the Rock Springs Navajo community, over which the Navajo Nation asserts jurisdiction, provides services, and organizes local government subdivisions.

{3} Mr. Belone purchased a car in Chambers, Arizona from Midway Resale Outlet (Midway). Midway financed Belone's purchase and acquired a security interest in Belone's car. Midway subsequently assigned Belone's retail installment contract to Tempest, a New Mexico corporation licensed to do business as a collection agency. Thereafter, Belone defaulted by failing to make payments as required under the contract. Tempest's agents entered Belone's allotment and, without Belone's written consent or a Navajo tribal court order, repossessed Belone's car.

{4} Tempest filed suit in state district court, alleging a breach of contract claim against Belone for the deficiency. Belone counterclaimed alleging that Tempest breached the peace by repossessing his vehicle without his written consent or a tribal court order, and that he was entitled to damages under Navajo law. Tempest argued that its repossession of Belone's car is governed by New Mexico law and was not a breach of the peace because NMSA 1978, § 55–9–503 (repealed 2001) of the Uniform Commercial Code gave Tempest the right to self-help repossession. Both parties sought summary judgment.

{5} Under New Mexico law, repossession of goods upon default is permissible without the consent of the debtor. Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without a breach of the peace.[1] Section

---

1. A similar provision now appears at NMSA 1978, § 55–9–609(b)(2) (2001).

55–9–503. The Navajo law on repossession, which is provided for in the Navajo Nation Code, requires creditors, absent the written consent of the consumer, to seek judicial process for the return of secured collateral as follows:

The personal property of Navajo Indians shall not be taken from the territorial jurisdiction of the Navajo Nation under the procedures of repossession except in strict compliance with the following:

A. Written consent to remove the property from the territorial jurisdiction of the Navajo Nation shall be secured from the Navajo purchaser at the time repossession is sought. The written consent shall be retained by the creditor and exhibited to the Navajo Nation police officer or official upon proper demand.

B. Where the Navajo purchaser refuses to sign said written consent to permit removal of the property from the jurisdiction of the Navajo Nation, the property shall be removed only by order of a District Court of the Navajo Nation in an appropriate legal proceeding.

Nation Code tit. 7, § 607 (1995). In the event of unlawful repossession, Nation Code tit. 7, § 609 (1995) provides that the wronged purchaser may recover damages as follows:

A. Any person who violated 7 NNC § 607 and any business whose employee violates such section is deemed to have breached the peace of the Navajo Nation, and shall be civilly liable to the purchaser for any loss caused by the failure to comply with 7 NNC §§ 607–609.

B. If the personal property repossessed is consumer goods . . ., the purchaser has the right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price.

{6} The retail installment contract provides that the contract shall be governed by the laws of the State of Arizona. However, the contract goes on to read that "if Property is repossessed, then the law of the state where the property is repossessed will govern the repossession." Therefore, whether the civil jurisdiction of the tribal court extends beyond the Navajo Nation reservation boundaries into Indian allotment lands will be analyzed under New Mexico law, the state where the repossession took place. *See* NMSA 1978, § 55–1–105 (2001) ("[E]xcept as provided in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or such other state or nation shall govern their rights and duties."). We note that the Navajo Nation has a similar choice-of-law provision. *See* Nation Code tit. 5A, § 1–105 (1995). The McKinley County district court applied our holding in *Chischilly,* and granted Tempest's motion for summary judgment against Belone for $18,212.41 and denied Belone's motion for summary judgment. Belone appealed to the Court of Appeals, which certified the case to us to determine whether *Chischilly* is still good law. We overrule *Chischilly* because the Supreme Court has unequivocally applied § 1151's definition of Indian Country to civil as well as criminal matters since *Chischilly* was decided. We hold that the allotted land from which Belone's vehicle was repossessed is Indian Country which would confer concurrent jurisdiction in the Navajo Nation to Belone's wrongful repossession counterclaim.

### DISCUSSION

#### I. Standard of Review

{7} At issue is whether the district court erred by granting Tempest's motion for summary judgment and denying Belone's motion for summary judgment under Rule 1–056 NMRA 2003. We review the district court ruling de novo because summary judgment involves a question of law. *Garcia–Montoya v. State Treasurer's Office,* 2001–NMSC–003, ¶ 7, 130 N.M. 25, 16 P.3d 1084. "Summary judgment under Rule 1–056 'is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.'" *Cates v. Regents of the N.M. Inst. of Mining & Tech.,* 1998–NMSC–002, ¶ 9, 124 N.M. 633, 954 P.2d 65 (quoting *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992)). "On appeal, a reviewing court will consider the whole

record for evidence that places a material fact at issue." *Id.* Here, the facts are undisputed. The parties stipulate that Tempest repossessed Belone's car from allotted Indian lands without a Navajo tribal court order and without Belone's written consent.

## II. We overrule *General Motors Acceptance Corp. v. Chischilly*

{8} Indian Country is defined at 18 U.S.C. § 1151, which provides:

[T]he term 'Indian country'... means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation; (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state; and (c) *all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.*

(emphasis added). This section of the United States Code at Title 18 addresses federal crimes and criminal procedure. In *Chischilly,* we chose not to extend the § 1151(c) "pattern of jurisdiction into the civil area." 96 N.M. at 115, 628 P.2d at 685.

{9} *Chischilly,* which is factually similar to the present case, also concerned the repossession of a vehicle on land included in the § 1151 definition of Indian Country. In finding that § 1151 defined Indian Country for criminal jurisdiction purposes only, we were unpersuaded by Chischilly's argument that the Supreme Court's footnote in *DeCoteau v. District County Court,* 420 U.S. 425, 427 n. 2, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975), provided authority to extend the § 1151 definition to civil jurisdiction matters. *Chischilly,* 96 N.M. at 115, 628 P.2d at 685. The relevant part of this footnote reads: "While § 1151 is concerned, on its face, only with criminal jurisdiction, the [Supreme] Court has recognized that it generally applies as well to questions of civil jurisdiction." *DeCoteau,* 420 U.S. at 427 n. 2, 95 S.Ct. 1082. This

Court held that the *DeCoteau* footnote was ambiguous and the cases cited as authority for it did not refer to any civil application of § 1151. *Chischilly,* 96 N.M. at 115, 628 P.2d at 685. We were concerned about the probable confusion created by the checkerboard pattern of jurisdiction and believed it would be much more manageable if the civil jurisdiction of the tribal court were simply co-extensive with the boundaries of the reservation. *Chischilly,* 96 N.M. at 114–15, 628 P.2d at 684–85. Because, with the exception of the footnote in *DeCoteau,* federal law on the subject seemed sparse, we did not feel compelled to extend the same confusing pattern of jurisdiction into the civil area. *Id.*

{10} Since *DeCoteau,* the Supreme Court and the Tenth Circuit have consistently held that § 1151 defines tribal territorial jurisdiction for both criminal *and civil* matters. *See Okla. Tax Comm'n v. Chickasaw Nation,* 515 U.S. 450, 453, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995) (holding "Oklahoma may not apply its motor fuels tax, as currently designed, to fuel sold by the Tribe in Indian country"); *Mustang Prod. Co. v. Harrison,* 94 F.3d 1382, 1385–86 (10th Cir.1996) (holding that the Cheyenne–Arapaho Tribes had authority to impose a severance tax on oil and gas production occurring on allotted lands and reaffirming that such allotted lands constitute Indian Country); *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531, 1540 (10th Cir.1995) ("We have consistently followed *DeCoteau.*"); *Texaco, Inc. v. Zah,* 5 F.3d 1374, 1377 n. 3 (10th Cir.1993) ("This definition [of Indian Country], although found in the Major Crimes Act, applies to questions of both criminal and civil jurisdiction.").

{11} The first explicit statement by the Supreme Court that § 1151's definition of Indian Country applies to questions of civil jurisdiction is found in *Alaska v. Native Village of Venetie Tribal Government,* 522 U.S. 520, 527, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998). In that case, the Supreme Court addressed the term "dependent Indian communities" in § 1151(b). *Id.* Although that decision did not address allotted Indian lands, it is significant to our analysis of civil jurisdiction over allotted Indian lands be-

cause of the Supreme Court's explicit recognition of the language from *DeCoteau* where it noted: "Although this [§ 1151] definition by its terms relates only to federal criminal jurisdiction, we have recognized that it also generally applies to questions of civil jurisdiction such as the one at issue here." *Id.*

■ {12} This Court in a criminal case has recognized, albeit in gratis dictum, the application of § 1151 to civil jurisdiction determinations. *See State v. Frank*, 2002–NMSC–026, ¶¶ 19, 23, 132 N.M. 544, 52 P.3d 404 ("We adopt the two-prong test adopted in *Venetie* to resolve questions of Indian jurisdiction in civil and criminal cases."). We now expressly overrule *Chischilly*, and hold that the allotted Indian lands from which Tempest repossessed Belone's car was Indian Country pursuant to § 1151. The parties have not briefed the choice-of-law issue we believe follows from this holding. In the absence of briefing, we prefer not to resolve this issue. Therefore, on remand, the district court should apply choice-of-law rules in determining whether Navajo law applies to the merits of Belone's counterclaim.[2]

■ {13} Although we conclude that the civil jurisdiction of the tribal court extends to Indian allotments, we do not believe that the tribal court has exclusive jurisdiction under the facts and procedure of this case. "Generally, primary jurisdiction over land that is Indian Country rests with the Federal Government and the Indian [nation] inhabiting it, not with the States." *Venetie*, 522 U.S. at 527 n. 1, 118 S.Ct. 948 (1998) (citing *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998)). Indian nations also possess a broad measure of civil jurisdiction over the activities of non-Indians on Indian reservation lands in which the tribes have a significant interest. *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). While that broadness of tribal civil jurisdiction has been limited as it applies to non-Indians, *Montana v. United States*, 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493

(1981), the Supreme Court continues to uphold "the right of reservation Indians to make their own laws and be ruled by them." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959)).

■ {14} We have adopted the "infringement test" developed from *Williams*, the seminal Supreme Court case addressing a state court's jurisdiction over causes of action involving Indian matters. *Found. Reserve Ins. Co. v. Garcia*, 105 N.M. 514, 515, 734 P.2d 754, 755 (1987). The *Williams* test, which is principally applicable in situations involving a non-Indian party, is "designed to resolve the conflict by providing that a state could protect its interest up to the point where tribal self-government would be affected." *State ex rel. Dep't of Human Servs. v. Jojola*, 99 N.M. 500, 502, 660 P.2d 590, 592 (1983). To determine whether the exercise of state court jurisdiction infringes on the right of an Indian nation to make its own laws and be governed by them, we consider three specific factors:

(1) whether the parties are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) what is the nature of the interest to be protected.

*Found. Reserve*, 105 N.M. at 515, 734 P.2d at 755; *Chino v. Chino*, 90 N.M. 203, 206, 561 P.2d 476, 479 (1977). We also have considered the types of situations in which exclusive tribal court jurisdiction is appropriate:

Exclusive tribal jurisdiction exists where an action involves a proprietary interest in Indian land; or when an Indian sues another Indian on a claim for relief recognized only by tribal custom and law; or when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian country.

*Found. Reserve*, 105 N.M. at 516, 734 P.2d at 756 (citations omitted).

■ {15} Applying the aforementioned criteria to the present facts, nothing in the

---

2. *See generally* Wm. C. Canby, Jr., *American Indian Law* (3rd ed.1998) at 214–15 ("[s]tate courts applying normal choice of law principles should frequently apply tribal law to issues arising in Indian Country.").

record suggests that litigation of this claim in state court impermissibly infringes upon Navajo Nation sovereignty. Moreover, the facts in this case do not fit squarely within any of the categories of exclusive tribal jurisdiction. *See State Sec., Inc. v. Anderson,* 84 N.M. 629, 631, 506 P.2d 786, 788 (1973) (noting that powers not reserved to Indians for their exclusive jurisdiction include suits by Indians against outsiders). Formation of the retail installment contract between Midway and Belone occurred outside Indian Country. Thus, Tempest's breach of contract cause of action cannot be said to arise within Indian Country as defined by § 1151. *Satterwhite v. Stolz,* 79 N.M. 320, 321, 442 P.2d 810, 811 (Ct.App.1968) ("The place where the final act is done determines the applicable law for the interpretation of the contract."). New Mexico can exercise concurrent jurisdiction over the breach of contract action because we cannot see, and Belone does not demonstrate, how concurrent jurisdiction would impinge upon tribal sovereignty in the present context.[3]

{16} Belone's counterclaim clearly arises in Indian Country under the *Foundation Reserve* criteria. However, Belone chose to raise his counterclaim in state court. We acknowledge that Tempest made the initial decision to bring its suit to state court, which may have somewhat limited Belone's choice of forum regarding a potential compulsory counterclaim. While he did not make the initial forum selection, we note that he could have sued Tempest separately in tribal court. *See Halwood v. Cowboy Auto Sales, Inc.,* 1997–NMCA–098, ¶ 16, 124 N.M. 77, 946 P.2d 1088 ("[T]ribes possess adjudicatory authority over the regulated on-reservation activities of nonmembers when those activities are ... in fact contrary to the express provisions of the tribal code."). Furthermore, an Indian generally has the right to invoke the jurisdiction of a state court to protect his or her rights against a non-Indian defendant,

even if the controversy arose in Indian Country. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.,* 467 U.S. 138, 148–49, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) (holding, in general, Indians may sue non-Indians in state court); *Paiz v. Hughes,* 76 N.M. 562, 564–65, 417 P.2d 51, 52 (1966) (holding that an Indian may invoke the jurisdiction of a state court to protect his rights to recover for personal injuries arising from an accident on Indian land). Therefore, New Mexico shares concurrent jurisdiction over the wrongful repossession counterclaim and the underlying claim for breach of contract in this case.

## CONCLUSION

{17} For the foregoing reasons, we hold that allotted Indian lands are part of Indian Country for purposes of determining both civil and criminal jurisdiction. We overrule *Chischilly* in accordance with the Supreme Court's holdings that Indian nations have civil, as well as criminal, jurisdiction over allotted Indian lands. We remand this case to state district court for further proceedings consistent with this opinion.

{18} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and RICHARD C. BOSSON, Justices.

---

3. We recognize that the Supreme Court has interpreted the "longstanding policy of encouraging tribal self-government," as including the development of tribal courts because "[t]ribal courts play a vital role in tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Furthermore, "[a] federal court's exercise of jurisdiction over matters relating to reservation affairs can ... impair the authority of tribal courts." *Id.* at 15, 107 S.Ct. 971. In response, federal courts apply an "exhaustion doctrine," which allows for a tribal court to determine its jurisdiction before a federal court will exercise its own jurisdiction in cases where concurrent jurisdiction may exist. *See id.* at 17, 107 S.Ct. 971.