2008-NMCA-116

192 P.3d 275

**Angelina GARCIA, formerly known as, Angelina Gutierrez, Petitioner– Appellee,**

v.

**Matthew GUTIERREZ, Respondent– Appellant.**

**No. 26,484.**

Court of Appeals of New Mexico.

July 8, 2008.

Certiorari Granted, No. 31,263, Aug. 25, 2008.

Gutierrez. Gutierrez, who is a member of the Pueblo of Pojoaque, argued that the district court lacked subject matter jurisdiction over the issues raised in the petition as a matter of state law and that, even if the district court did have such jurisdiction under our state statutes, its exercise of jurisdiction was improper as a matter of federal Indian law. As we conclude that the district court had jurisdiction over those issues raised in the petition for dissolution of marriage that were unrelated to child custody, we affirm the district court's order as to those issues. The question of the district court's subject matter jurisdiction over the custody dispute requires this Court to determine whether land owned in fee by a non-Indian within the exterior boundaries of a pueblo is considered part of a "tribe" for purposes of determining the "home state" of a child under the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA), NMSA 1978, Sections 40–10A–101 to –403 (2001). As we conclude that such land is part of the tribe as that term is used in the UCCJEA, we hold that the district court erred in concluding that the children in this case had no home state and in finding that it, rather than the tribal court, had jurisdiction. Accordingly, we reverse the district court as to the custody matters and remand so that those claims may be dismissed.

## I. BACKGROUND

{2} During their marriage, the couple and their two children lived for the most part on the Pueblo of Pojoaque. Garcia was physically abused by Gutierrez, and she decided to leave him on August 25, 2002. On that day, Garcia took the children and went to her father's house. That house is on land that her father owns in fee within the exterior boundaries of the Pueblo.

{3} When Gutierrez realized that Garcia had left him, he went to his father-in-law's house and got into an altercation with Garcia's brother and stabbed him. *See State v. Romero*, 2006–NMSC–039, ¶¶ 3, 26, 140 N.M. 299, 142 P.3d 887 (consolidating Gutierrez's state criminal case with that of another Indian defendant and discussing the ownership

Atkinson & Kelsey, P.A., Thomas C. Montoya, Albuquerque, NM, for Appellee.

Michael Schwarz, Santa Fe, NM, for Appellant.

***OPINION***

ROBINSON, Judge.

{1} This case comes before us on appeal from a partial final order pursuant to a divorce between Angelina Garcia and Matthew

status of the land on which the stabbing occurred). Gutierrez was arrested and placed in the custody of the Santa Fe County Detention Center. The next day, on August 26, 2002, Garcia was awarded a temporary order of protection by the First Judicial District Court and was awarded temporary custody of the children.

{4} On October 9, 2002, Garcia filed a petition for dissolution of the marriage. Gutierrez moved to dismiss the case for lack of jurisdiction. The district court denied the motion. Gutierrez then filed a parallel case in tribal court and, on April 26, 2004, the tribal court awarded Garcia and Gutierrez joint legal custody over the children. Gutierrez sought to have the tribal court's order enforced by the district court, but the district court denied the motion. On September 30, 2005, the district court entered a divorce decree, indicating that there was no just cause for delay in entering the decree. *See* Rule 1–054(B)(1) NMRA (indicating that "when more than one claim for relief is presented in an action ... the court may enter a final judgment as to one or more but fewer than all of the claims only upon an express determination that there is no just reason for delay"). Gutierrez did not appeal from this order. On January 11, 2006, the district court entered findings of fact and conclusions of law, stating that it had subject matter jurisdiction over the dissolution of the marriage, as well as over issues of custody, child support, distribution of assets and debts, and attorney fees. The district court accepted the parties' stipulation as to property, debts, and child support, but did not make any determination as to the custody of the children. The court entered a "Partial Final Order" on January 19, 2006, adopting its findings of fact and conclusions of law, stating that there is no just reason for delay in entering the order. *See* Rule 1–054(B)(1).

## II. DISCUSSION

{5} Gutierrez appeals from the district court's January 19 order. He argues that the district court had no jurisdiction over the petition for dissolution of marriage under NMSA 1978, Section 40–4–5 (1977); that the district court had no jurisdiction under the

UCCJEA; and that, even if jurisdiction in state court was appropriate under state law, the tribal court had exclusive jurisdiction as a matter of federal Indian law because the district court's exercise of jurisdiction over this matter infringes on the sovereign rights of the Pueblo.

### A. Standard of Review

■ {6} We review de novo the district court's conclusion that it had subject matter jurisdiction over the issues raised in this case. *See Smith v. City of Santa Fe*, 2007–NMSC–055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[T]he question of whether a trial court has jurisdiction in a particular case is a question of law that we review de novo.").

### B. Jurisdiction Under Section 40–4–5

■ {7} Gutierrez claims that the district court did not have jurisdiction over the dissolution petition under Section 40–4–5, which governs jurisdiction in divorce cases. Gutierrez did not appeal from the final order dissolving his marriage that was entered on September 30, 2005. Furthermore, he concedes that this order, containing the decretal language that there is "no just cause for delay," was a final order. As the propriety of this order is therefore not before us, we will not decide whether the district court had jurisdiction to dissolve the marriage by entering the divorce decree. Nevertheless, the order from which Gutierrez does appeal, entered on January 19, 2006, resolves other issues that were raised by the dissolution petition. Therefore, we believe that we must determine whether the district court had jurisdiction to decide the issues resolved in the order of January 19, 2006.

{8} Section 40–4–5 provides:

The district court has jurisdiction to decree a dissolution of marriage when at the time of filing the petition either party has resided in this state for at least six months immediately preceding the date of the filing and has a domicile in New Mexico. As used in this section, "domicile" means that the person to whom it applies:

A. is physically present in this state and has a place of residence in this state;

B.   has a present intention in good faith to reside in this state permanently or indefinitely[.]

■ {9} Once the district court determines that it has jurisdiction to dissolve the marriage under Section 40–4–5, it is also authorized to make decisions regarding child custody, the division of property, and other issues related to the dissolution. NMSA 1978, § 40–4–7 (1997). However, since jurisdiction over child custody issues when there is a jurisdictional conflict is determined by the UCCJEA as the more specific statute, *see Compton v. Lytle,* 2003–NMSC–031, ¶ 16, 134 N.M. 586, 81 P.3d 39 ("[W]here two statutes conflict, the specific governs over the general."), we only determine whether Sections 40–4–5 and –7 granted the district court jurisdiction over the issues raised in the petition that were unrelated to child custody.

{10} Here, it is undisputed that both Garcia and Gutierrez lived within the exterior boundaries of the State of New Mexico for the six months preceding the filing of this action. Garcia lived on the Pueblo and then on her father's fee land within the Pueblo's exterior borders, and Gutierrez lived on the Pueblo and then in the Santa Fe County Detention Center. However, Gutierrez argues that because both he and Garcia lived within the boundaries of the Pueblo for some portion of that six-month period neither one met the requirement of Section 40–4–5 that they reside in the state for a minimum of six months. We disagree. Tribal lands within a state are generally considered to be part of a state's territory, *see Nevada v. Hicks,* 533 U.S. 353, 361–62, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), and unlike the UCCJEA, which we discuss later in this opinion, nothing in Section 40–4–5 suggests that tribal land within New Mexico is not part of the state for the purpose of determining jurisdiction. Accordingly, we conclude that the district court had jurisdiction over the dissolution of the parties' marriage under Section 40–4–5.

### C.   Whether Jurisdiction Under Section 40–4–5 Infringes on Tribal Sovereignty

■ {11} Even if state court jurisdiction over the non-custody issues in this case is proper under state law, it may be impermissible under federal law if it infringes on the rights of pueblo members to make their own laws and be ruled by them. *See Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). While it is not entirely clear whether Gutierrez intends the arguments he makes in his briefs regarding infringement to apply to the district court's assumption of jurisdiction over issues other than child custody, an appellate court has a duty to determine whether it has jurisdiction on appeal, and so we address the question of jurisdiction as it applies to the non-custody issues even if that question is raised sua sponte. *See Smith,* 2007–NMSC–055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[I]t is incumbent upon the appellate court to raise jurisdiction questions sua sponte when the Court notices them.").

{12} Garcia argues that Gutierrez is without standing to raise any claim of tribal sovereignty, apparently because she believes that it is the tribe alone that may raise such contentions. Garcia cites no authority in support of such a proposition, and we can dismiss this argument quickly. Gutierrez is an enrolled member of the Pueblo of Pojoaque and, as such, he has a personal interest in whether his case is heard in state, as opposed to tribal, court. *See, e.g., Williams,* 358 U.S. at 218, 79 S.Ct. 269 (permitting tribal member defendant to argue that state court did not have jurisdiction to hear the case against him). In addition, questions of subject matter jurisdiction must be resolved by this Court regardless of whether the parties raise them. *See Smith,* 2007–NMSC–055, ¶ 10, 142 N.M. 786, 171 P.3d 300. Therefore, even if Gutierrez did not have standing to raise the argument that a tribal court had exclusive jurisdiction over this matter, this Court would be required to address the issue.

{13} Although the non-custody issues were decided pursuant to a stipulation by Gutierrez, that stipulation would ordinarily not waive a claim that the state court lacked subject matter jurisdiction, since such challenges generally cannot be waived. *See* Rule 1–012(H)(3) NMRA; *see, e.g., Gonzales v. Surgidev Corp.,* 120 N.M. 133, 138, 899 P.2d

576, 581 (1995) ("It is well settled that subject matter jurisdiction cannot be waived[.]"); *Spingola v. Spingola,* 93 N.M. 598, 600, 603 P.2d 708, 710 (1979) (stating that subject matter jurisdiction cannot be "extended by agreement of the parties"); *United States v. Burch,* 169 F.3d 666, 668 (10th Cir.1999) (stating that subject matter jurisdiction cannot be conferred "by stipulation, estoppel, or waiver").

{14} However, it appears that in *Lonewolf v. Lonewolf,* 99 N.M. 300, 657 P.2d 627 (1982), the Supreme Court held that an Indian husband waived his objections to state court jurisdiction over a petition for dissolution of marriage filed by his non-Indian wife when he participated in the litigation by filing a counterclaim, and "when he entered a stipulation regarding various items of community personal property." *Id.* at 302, 657 P.2d at 629. It may be that the Supreme Court reached this conclusion because it considered the issue to be one of personal, rather than subject matter, jurisdiction. *See* Rule 1–012(H)(1); *Stetz v. Skaggs Drug Ctrs., Inc.,* 114 N.M. 465, 470, 840 P.2d 612, 617 (Ct.App.1992) ("The defense of lack of personal jurisdiction is subject to waiver when not properly asserted.").

{15} Even if we apply the general rule that jurisdictional challenges may not be waived, we conclude that under *Lonewolf,* the district court had subject matter jurisdiction over the non-custody issues raised pursuant to the dissolution petition. In *Lonewolf,* the New Mexico Supreme Court applied *Williams,* and concluded that a state district court did have jurisdiction over a divorce action brought by a non-Indian wife against an Indian husband, which is the situation in the present case. *Lonewolf,* 99 N.M. at 301–02, 657 P.2d at 628–29. Like the parties in the present case, it appears that the parties in *Lonewolf* primarily lived on the pueblo during their marriage. Although *Lonewolf* did not expressly discuss this, the real property owned by the parties in *Lonewolf* was on the pueblo, and the community property that was in dispute was also located on the pueblo. *See* 99 N.M. at 300–01, 657 P.2d at 627–28; *but see, id.* at 301, 657 P.2d at 628 (noting that at least some community proper-

ty was located off the reservation). Consequently, we conclude that the state court properly exercised jurisdiction over the allocation of property and debts in this case.

{16} We acknowledge that *Williams* sets out a rule that, in the absence of a federal law authorizing the assumption of such jurisdiction, a state court does not have jurisdiction over a suit initiated by a non-Indian plaintiff against an Indian defendant when the events leading to the suit arose in Indian country. 358 U.S. at 217–18, 223, 79 S.Ct. 269. However, it appears to be unclear whether this rule would apply under the circumstances of this case. As noted by a leading treatise,

> [d]ivorce between Indian and non-Indian spouses domiciled in Indian country presents several unresolved jurisdictional problems. [*Williams* ] and its progeny would suggest that the non-Indian who seeks to divorce an Indian would have to go to tribal court, while an Indian who seeks to divorce a non-Indian would have a right to use the state courts as well as the tribal courts.... It would ... be preferable for [cases brought by non-Indians against Indians] to be left to exclusive tribal jurisdiction, but it cannot be said that this preference is presently the law with respect to divorce.

William C. Canby, Jr., *American Indian Law in a Nutshell* 188, 212 (4th ed.2004).

{17} Given the uncertainty about the applicability of *Williams* in the present context and given our Supreme Court's decision in *Lonewolf,* we hold that the district court had jurisdiction over the non-custody issues in this case. We affirm the district court's determination of those issues.

## D. Jurisdiction Under the UCCJEA

{18} Gutierrez asserts that the district court erred in concluding that it had jurisdiction over the child custody claims in this case. The UCCJEA sets out a comprehensive scheme for determining whether a New Mexico court has jurisdiction to make decisions regarding child custody when there is a jurisdictional conflict. The Act provides:

[A] court of this state has jurisdiction to make an initial child-custody determination only if:

this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

§ 40–10A–201(a)(1). A child's "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." § 40–10A–102(7). The Act expressly provides that Indian tribes are to be treated as states in determining whether or not a child has a home state. *See* § 40–10A–104(b) ("A court of this state shall treat a tribe as if it were a state of the United States for the purpose of applying Articles 1 and 2 of the Uniform Child–Custody Jurisdiction and Enforcement Act."). The Act indicates that jurisdiction is presumptively in the child's home state if there is one. *See* § 40–10A–201(a)(2). However, if there is no home state because, for example, the child and both parents lived in one state for the three months immediately preceding the filing of the case, but lived in a different state for the three months prior to that, the forum state may exercise jurisdiction if:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training and personal relationships[.]

§ 40–10A–201(a)(2)(A)–(B).

{19} Here, the district court found that the children had no home state because in the six months immediately prior to the filing of the petition for divorce on October 9, 2002, the children lived on Pueblo land until August 25 and then lived on fee land within the outer boundaries of the Pueblo, which the district court apparently considered to be state land from August 25 to October 9. Because the district court concluded that the children had no home state, it then found that it could assume significant connection jurisdiction, since both parents had a significant connection to the State of New Mexico, and there was evidence of the children's care, protection, training, and personal relationships in New Mexico.

{20} Gutierrez argues that the district court erred in concluding that the children had no home state since the children lived within the exterior boundaries of the Pueblo for the six months prior to the filing of the suit, and the Pueblo is to be treated as a state under the UCCJEA. The question is, therefore, whether the district court was correct that the children had no home state because the fee land within the exterior boundaries of the Pueblo was state, rather than tribal, land for the purposes of the UCCJEA. We conclude that the district court was not correct.

{21} Although Section 40–10A–104(b) of the UCCJEA states that "[a] court of this state shall treat a tribe as if it were a state of the United States for the purpose of applying Articles 1 and 2 of the Uniform Child–Custody Jurisdiction and Enforcement Act," it is not clear how "a tribe" is to be treated as "a state" under the circumstances of this case. There is nothing in the UCCJEA that answers the question of whether non-Indian fee land within the outer boundaries of a pueblo qualifies as part of "a tribe" for the purpose of Section 40–10A–104(b). However, the UCCJEA is a jurisdictional statute, and a tribe's territorial jurisdiction is generally defined by whether the land qualifies as Indian country as described in 18 U.S.C. § 1151 (2000). *See Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123–26, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993). Although, on its face, Section 1151 sets out the boundaries of Indian country for the purpose of criminal jurisdiction, its definition also applies in civil cases. *See Belone*, 2003–NMSC–019, ¶¶ 10–12, 134 N.M. 133, 74 P.3d 67 (holding that tribal courts have civil jurisdiction over Indian country as defined in Section 1151).

{22} Section 1151 states:

Except as otherwise provided in [S]ections 1154 and 1156 of this title, the term "Indian country[,"] as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

Under Section 1151, even if a tribe or tribal member does not own the fee land within its borders, such properties are generally considered to be part of the tribe for purposes of determining whether tribal, state, or federal courts have jurisdiction over events occurring on such land. *See Romero,* 2006–NMSC–039, ¶¶ 3, 26, 140 N.M. 299, 142 P.3d 887 (holding that the definition of Indian country in Section 1151 includes fee land within the exterior boundaries of a pueblo and that the State of New Mexico had no jurisdiction over Gutierrez for the stabbing committed on his father-in-law's fee land within the exterior boundaries of the Pueblo).

▆ {23} Because fee lands within the exterior boundary of a pueblo are considered part of Indian country under Section 1151, and are therefore part of the land governed by a tribal government for purposes of civil court jurisdiction, it would seem anomalous to interpret the UCCJEA's admonition to treat tribes as states in a manner that would not include fee lands. While one might argue that the drafters of the UCCJEA could have used the term "Indian country" or expressly referred to Section 1151 had they intended to include such lands, it appears that the reason the term was not used is that the drafters intended the definition of a tribe to be even more expansive under the UCCJEA than the definition of Indian country. The United States Supreme Court has held that Section 1151 does not include Alaskan Native villages, *see Venetie Tribal Government,* 522 U.S. at 532–34, 118 S.Ct. 948 but

the drafters of the UCCJEA expressly treat such villages as states under the UCCJEA. *See* Unif. Child–Custody Jurisdiction & Enforcement Act § 102(16), 9 U.L.A. 659 (1999) (" 'Tribe' means an Indian tribe or band, or Alaskan Native village, which is recognized by federal law or formally acknowledged by a State."); § 40–10A–102(16) (same). Accordingly, we hold that where the definition of a tribe for purposes of the UCCJEA was intended to be even more inclusive than the definition of Indian country, the land owned in fee by Garcia's father was part of the tribe for purposes of determining whether the children had a home state. As the children lived within the exterior borders of the Pueblo for the entire six months before this case was filed in district court, the Pueblo was their home state, and the district court did not have jurisdiction to determine child custody under our state statute.

{24} We note that the United States Supreme Court has held that a tribe's power to regulate non-Indian activity on fee land within the exterior boundaries of a reservation is limited. *See Hicks,* 533 U.S. at 360, 121 S.Ct. 2304 (noting that "with one minor exception, we have never upheld ... the extension of tribal civil authority over nonmembers on non-Indian land"); *see also Strate v. A–1 Contractors,* 520 U.S. 438, 446, 459, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); *Mont. v. United States,* 450 U.S. 544, 565–66, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). We also note that the Supreme Court has granted certiorari in a case that raises the issue of whether tribal courts have adjudicatory authority over a dispute between an Indian-owned corporation and a non-Indian corporate defendant. *See Plains Commerce Bank v. Long Family Land & Cattle Co.,* — U.S. ——, 128 S.Ct. 829, 169 L.Ed.2d 626 (2008) (mem.). However, these cases do not direct our interpretation of whether fee land within a pueblo's exterior boundaries constitutes part of the "tribe" as that term is used in the UCCJEA. Our definition is not based on the political status of the parties in a particular case. To the degree that these Supreme Court cases might suggest that a tribal court would not have jurisdiction over a non-Indian defendant in a custody dispute involving chil-

dren who live on fee land within a reservation, a non-Indian defendant would have to raise that issue when brought before the tribal court. If the tribal court finds that it does not have jurisdiction on that basis, the parties are not left without a forum. The state court can take jurisdiction under the provision of the UCCJEA that allows for jurisdiction when the child's home state has declined jurisdiction. § 40–10A–201(a)(2).

{25} As an alternate basis of state court jurisdiction under the UCCJEA, Garcia contends that even if the district court did not have jurisdiction to make an initial custody determination under Section 40–10A–201, it had jurisdiction to modify the temporary custody order that was filed in the domestic violence case. The UCCJEA provides:

> Except as otherwise provided in Section 204 [regarding emergency jurisdiction], a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under Section 201(a)(1) or (2) ... and:

> (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 202 ... or that a court of this state would be a more convenient forum under Section 207 ...; or

> (2) a court of this state or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

§ 40–10A–203. As neither of these bases for modification jurisdiction are applicable in this case, the state would only have modification jurisdiction in an emergency. *See id.* Garcia suggests that the district court had authority under Section 40–10A–204 to modify the custody order entered in the domestic violence case because the domestic violence order was entered under emergency conditions. But while Section 40–10A–204 certainly authorized the district court to take jurisdiction as an emergency matter in the domestic violence case, *see* Section 40–10A–204(a) ("A court of this state has temporary emergency jurisdiction if the child is present

in this state and ... it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."), this does not mean that the district court was authorized to exercise jurisdiction in the instant divorce case. The temporary custody order was to remain in effect only "until an order is obtained from a court of a state having jurisdiction under Sections 201 through 203." § 40–10A–204(b). Emergency jurisdiction under the UCCJEA is intended to be temporary, since the purpose of such jurisdiction is "to protect the child[ren] until the State that has jurisdiction under Sections 201–203 enters an order." Unif. Child–Custody Jurisdiction & Enforcement Act § 204 cmt., 9 U.L.A. 677 (1999). In this case, the court that had jurisdiction under § 40–10A–201 was the tribal court, since the tribe was the children's home state. Therefore, as soon as a custody order was obtained from the tribe, the temporary order issued by the state court in the domestic violence case was no longer in effect.

{26} Because we conclude that the state court did not have jurisdiction under the UCCJEA to decide the custody issues in this case, we need not reach Gutierrez's argument that the state court's exercise of jurisdiction over the custody dispute infringed on tribal sovereignty as a matter of federal Indian law.

### E. Whether the PKPA Preempts the UCCJEA in this Case

{27} Garcia argues that the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2000), preempts the UCCJEA, and that, under the PKPA, it was the state and not the tribal court that had jurisdiction. We disagree that the PKPA directs the district court, rather than the tribal court, to take jurisdiction under the circumstances of this case. Under the PKPA, a forum state court is required to enforce and to refrain from modifying any child custody determination made by another state if the other state had jurisdiction over the dispute under the PKPA. § 1738A(a). A "State" is defined as "a State of the United

States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States." § 1738A(b)(8). One federal circuit court of appeals has held that tribal land is a territory of the United States for purposes of the Act, such that a tribe is to be treated as a state under the PKPA. *See In re Larch*, 872 F.2d 66, 68 (4th Cir.1989). The New Mexico Supreme Court has similarly concluded that tribal land constitutes a "territory" within the meaning of the general federal full faith and credit statute. 28 U.S.C. § 1738; *see Jim v. CIT Fin. Servs. Corp.*, 87 N.M. 362, 363, 533 P.2d 751, 752 (1975). Accordingly, relying on *Jim* and *Larch*, we conclude that, under the PKPA, tribes are United States territories that are to be treated as states. Garcia does not disagree, but argues that while tribes are to be treated as states for the purpose of the enforcement of judgments under the PKPA, tribal territory is not defined by 18 U.S.C. § 1151 under that Act. Consequently, Garcia argues that fee land within the exterior boundaries of the Pueblo is not part of the tribe and does not meet the PKPA's test for a child's home state. *See* 28 U.S.C. § 1738A(b)(4). We cannot agree. Section 1151 is simply a codification of the federal common law regarding tribal jurisdiction. *See* 18 U.S.C. § 1151, Historical and Statutory Notes (indicating that the statute is based on United States Supreme Court cases defining Indian country). The terms of federal statutes like the PKPA are to be construed in accordance with their common law meanings in the absence of some indication that Congress intended otherwise. *See Beck v. Prupis*, 529 U.S. 494, 500–01, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). The PKPA applies to territories of the United States, and as both Section 1151 and the federal common law on which it is based include fee land within the exterior boundary of a pueblo as part of a tribe's territory for jurisdictional purposes, we conclude that such land is part of the pueblo's territory for purposes of the PKPA.

{28} Garcia also argues that the PKPA required the tribe to refrain from exercising jurisdiction over the suit that Gutierrez filed against Garcia in tribal court, since that suit was not filed until after proceedings in district court had already begun. *See* 28 U.S.C. § 1738A(g) ("A court of a[s]tate shall not exercise jurisdiction in any proceeding for a custody ... determination commenced during the pendency of a proceeding in a court of another [s]tate where such court of that other [s]tate is exercising jurisdiction consistently with the provisions of this section."). Garcia argues that the tribal court's alleged failure to comply with the PKPA is relevant in that the district court did not have to give full faith and credit to the tribal court's custody order if the tribal court did not comply with the PKPA. However, Gutierrez has not raised on appeal the district court's refusal to enforce the tribal court's order. Instead, he has only appealed the district court's own assumption of jurisdiction over the dispute. In any case, the PKPA would only require the tribe to defer to the district court if the district court had jurisdiction under the laws of the State of New Mexico. *See* 28 U.S.C. § 1738A(c)(1) (stating that "[a] child custody ... determination made by a court of a[s]tate is consistent with the provisions of this section only if—such court has jurisdiction under the law of such [s]tate" and certain other conditions are met). As we have determined that the district court did not have jurisdiction to determine child custody under state law, there is nothing in the PKPA that would have required the tribal court to refrain from exercising jurisdiction in deference to the district court.

## III. CONCLUSION

{29} We conclude that the district court had jurisdiction to decide the non-custody issues raised by the petition for dissolution of marriage, but that it did not have jurisdiction to decide matters of child custody. Accordingly, we affirm those portions of the order relating to the non-custody matters and reverse those portions of the order relating to child custody. We remand the case for the district court to dismiss the claims relating to custody. As both parties have requested that they be awarded fees and costs, on remand, the district court shall determine whether and in what amounts such fees and costs should be awarded.

{30} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, and CYNTHIA A. FRY, Judges.